BECKER, Circuit Judge,
Concurring and Dissenting.
I join in Part II (the First Amendment Claim) and Part III (the False Arrest, Imprisonment & Malicious Prosecution claims). I dissent from Part IV (the Excessive Force claim) and Part V (the Assumpsit claim). With respect to Part VI, I join in the judgment but on different grounds. Since this is a not precedential opinion, I limit my discussion to my own ratio decidendi.
I.
What stands out for me with respect to the excessive force claim is that the record, which we must construe in the light most favorable to Feldman at this procedural state, reflects that he was kicked in the head, a fact corroborated by photographs which show very ugly bruises. Feldman’s testimony that he was kicked in the head is corroborated by the testimony of Byarr Meekins, one of the computer lab instructors, who stated in his deposition: “I think one of them had kicked him, but I really didn’t look at the whole complete thing; but I think I might have turned and saw him get kicked.” True, when asked if he could describe the officer who kicked Feldman, Meekins replied: “No, I can’t.” However, taken in the light most favorable to Feldman, the existence of this third party testimony, shaky though it may be, along with Feldman’s own account, leads me to conclude that there is a genuine issue of material fact as to the excessive force claim that should have been resolved by a jury and not by the judge.
II.
I also believe that Feldman’s assumpsit claim presents a jury issue. The Community College Student Handbook provides:
The Computing Suite, located in L-500, provides a number of services to students, faculty and staff of Allegheny Campus. There are six separate lab facilities that are coordinated and maintained bu the Department of Educational Computer Services. Students who are enrolled in courses that require the use of computers have preference in the use of Computing Suite facilities.
(Student Handbook, p. 23, App. 244).
As far as I can tell, all this passage demonstrates is that students enrolled in courses *829 that require use of computers (presumably computer science courses, although potentially others as well) will be given priority in the computer lab. This statement does not in any way support the contention that students not enrolled in computer courses, or who are simply registered as opposed to enrolled, will not have access to the computers.
Although Feldman had not started his course, he was enrolled. A number of CCAC witnesses assert that Feldman was not entitled to use the computer lab, either because he was not currently enrolled or because he was not doing course-related work. However, none of the CCAC defendants can point to written policy that supports their contentions. In short, given Feldman’s long-standing use of the computer lab, and given the fact that the student handbook seems to imply that he had the right to do so (or at the very least does not indicate that he did not have the right to do so), I think that there is enough here to create a genuine issue of material fact as to whether a contractual obligation existed on the part of CCAC to allow Feldman to use the computers.
III.
Feldman served a subpoena on Micron seeking a list “of all individual computer purchasers from Southwestern Pennsylvania during May 22 through May 30, 1995.” (App.102). In serving this subpoena, Feldman was trying to locate a woman with whom he had spoken in the computer lab on the evening of May 30,1995, just before the events that led to his arrest. That woman, according to Feldman, witnessed the entire arrest and would have been a material witness who could corroborate his version of events. Apparently, in the course of her conversation with Feldman, she mentioned that she had just purchased a Micron computer, hence his attempt to locate her through the subpoena.
In my view, the discovery issue is very close. I do not believe that it would have been burdensome for Micron to search its computerized records to reveal the names of individual computer purchasers from Southwestern Pennsylvania during the period May 22 through May 30, 1995. I also believe that the information was critical to Feldman’s case, which weighs in his favor on the issue. And I am underwhelmed by Micron’s confidentially argument; at all events the information could have been subjected to a protective order.
I concur in the judgment only because I believe that Feldman could have sought the information from CCAC. For example, Feldman could have tried to subpoena CCAC for a list of female computer science majors. I am therefore satisfied that Judge Lee did not abuse his discretion in denying the discovery request, which would at least have imposed some expense on Micron.
Finally I note that because of the closeness of the issue and the strong argument made by Feldman’s pro bono counsel, I believe that Micron’s motion for sanctions under 28 U.S.C. § 1927 for imposing unreasonable and unnecessary costs in litigation and under Rule 38 of the Federal Rules of Appellate Procedure for pursuing a frivolous issue on appeal is clearly without merit and was properly denied.